FILED by _____ D.C.
ELECTRONIC

**April 22, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO:
CIV- JUDGE:     ## 09-21073-CIV-HUCK/O'SULLIVAN

**CHAD ALTIERI, an individual, prose**
**LUCY PIEDRAHITA, an individual, prose**

        **Plaintiffs,**

vs.

**CLEAN COAL TECHNOLOGY,**
**a Florida-based corporation, ALVARO HERNANDEZ**
**LONDONO, as President of Clean Coal Technology,**
**And in his individual capacity, JOSEPH BERGMANN,**
**as CEO of Clean Coal Technology, and in his individual**
**capacity, AQUAPETRO TECHNOLOGIES, INC.,**
**a corporation, and "JOHN DOES," current unknown parties.**
_____/

### COMPLAINT
### FOR DEFAMATION, LIBEL PER QUOD, LIBEL PER SE
### DEFAMATION PER SE, TORTIOUS INTERFERENCE WITH BUSINESS
### RELATIONSHIPS,  TORTIOUS INTERFERENCE WITH CONTRACT, INJURIOUS
### FALSEHOOD–TRADE LIBEL, INJUCTIVE RELIEF,  AND OTHER EQUITABLE
### RELIEF  AND DAMAGES

**COMES NOW,** Plaintiffs CHAD ALTIERI, a single man (hereinafter also referred to as "ALTIERI") pro se and LUCY PIEDRAHITA-URIBE a single woman (hereinafter also referred to as "PIEDRAHITA-URIBE") pro se, and files and serves this legal action against Defendants CLEAN COAL TECHNOLOGY, a Florida-based corporation (hereinafter referred to as "CLEAN COAL"), ALVARO HERNANDEZ LONDONO, in his individual capacity, (hereinafter also referred to as "LONDONO") and JOSEPH BERGMANN, in his individual capacity (hereinafter also referred to as "BERGMANN") and AQUAPETRO TECHNOLOGIES, INC., a North Carolina based corporation (hereinafter referred to as "AQUPETRO") and as grounds therefore, state as follows:

### NATURE OF ACTION

This is an action for damages and injunctive relief as a result of Defendants malicious, willful and intentional defamation, tortious interference with business relationships, tortuous interference with contract, and trade libel.  Through direct communications and via its website, www.cleancoaltec.com, Defendants have made, and continue to make, defamatory statements and have published, and continue

to publish, false and inflammatory statements designed to intentionally attack and discredit Plaintiffs. Defendants repeated attacks and false statements have caused actual and verifiable damages to Plaintiffs in an amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD) in the past and such damages will continue in the future unless enjoined by this Honorable Court.

## PARTIES AND JURISDICTION

1. Plaintiff alleges based upon information and belief, that jurisdiction is proper in this Honorable Court since (a) the tortious company Defendant maintains an office here in the State of Florida, Palm Beach County, and (b) the damages alleged exceed the jurisdictional minimum of this Court.

2. That CLEAN COAL is a Florida based corporation, duly authorized by the Division of Corporations, State of Florida to do conduct business within the State, Document No: L0500007987, Managing Member, Joseph R. Bergmann, P.O. Box 210333, Royal Palm Beach, FL 33421, US; registered agent, Joseph R. Bergmann, 1744 Breakers West Blvd., West Palm Beach, FL 33411, and maintains a principal place of business in Palm Beach County, Florida at the address stated on its Florida registration stated herein.

3. That CLEAN COAL also maintains offices in Bogotá, Colombia, and a charter in Panama, which may include other locations, and is involved in international selling of coal.

4. That LONDONO and BERGMANN are partners in CLEAN COAL and the owner, managers, and control principles of the corporation.

5. That LONDONO and BERGMANN and/or through their agents are the creators, owners, moderators, authors and host of the internet website www.cleancoaltec.com.

6. That upon information and belief BERGMANN maintains a personal residence in Palm Beach County, in addition to his business office and address in the State of Florida via CLEAN COAL.

7. That upon information and belief, LONDONO maintains a personal residence in addition to his business office and address in the State of Florida via CLEAN COAL. That LONDONO also maintains a residence and his domicile in North Carolina.

8. That AQUAPETRO is a North Carolina based corporation, under the ownership and control of LONDONO and serves as his alter ego, in addition to representing an agency relationship to CLEAN COAL as the registrant of its website, www.cleancoaltec.com. That this website is accessible across the country and internationally, and is intended to target buyers and sellers

from the State of Florida as well as elsewhere, and although the specific state of incorporation for AQUAPETRO is not known to Plaintiffs at this time AQUAPETRO through its activities and business conduct within the State through CLEAN COAL would be deemed to have business conduct in the State.

9. Plaintiffs do not presently know the true identities of Defendants "John Does" as Defendants have a labyrinth of corporate "shelters" aimed to protect their true identities, extent of their assets, and to insulate their tortious conduct, and Plaintiff will request and reserve the right herein to Amend this Complaint at such time as same are ascertained.

10. Plaintiffs are informed and believe and based thereon allege that each of the Defendants named herein was acting within their executive capacity and in their individual capacity, outside the scope of their employment or executive duties, and acted with malicious intent in performing the wrongful acts alleged herein.

11. Plaintiffs are informed and believe and based thereon allege that Defendants "JOHN DOES" were acting as the agents or under the employ of CLEAN COAL or its executives, in either an official or individual capacity. Plaintiff is further informed and believe, and based thereon alleges, that Defendants, and each of them, engaged in a conspiracy with each other to cause Plaintiff to sustain the injuries herein alleged.

12. Plaintiffs are informed and believe and based thereon allege that Defendants "JOHN DOES" in performing the acts set forth below, were acting under the direct authority and direction of Defendant LONDONO and/or BERGMANN and within the scope of their employment. Alternately, Plaintiffs allege that the conduct of "JOHN DOES" was ratified by LONDONO and/or BERGMANN.

13. That diversity of jurisdiction exists under U.S. Code §1332.

## RELEVANT LAW & TREATIES

Florida Statute 634.336(3) and 634.336(4)

United States Panama Free Trade Agreement (Panama FTA)

United States Colombia Free Trade Agreement (Colombia FTA)

Central American Free Trade Agreement (CAFTA)

Lanham Act 15 USC §1125 (revised Section 43)

Computer Fraud and Abuse Act 18 U.S.C. §1030

Communications Decency Act 1996

## FACTS COMMON TO ALL CAUSES OF ACTION

14. That CLEAN COAL operates a coal business engaged in the contracting and selling of coal around the globe, with business ties to Colombia coal mines and various grades of such product. That LONDONO and BERGMANN are partners and co-owners of the company with BERGMANN serving as CEO, and LONDONO serving as President.

15. That CHAD ALTIERI, JD/MBA is a duly licensed and prominent corporate attorney in South Florida with a background in international business transactions, corporate structures, and contract negotiation among others. That ALTIERI is a member is good standing and holds an impeccable reputation among current clients, affiliates, and numerous business associates.

16. That Mr. ALTIERI's reputation is a vital part of his business integrity and ability to maintain existing client trust, as well as to acquire future business clients and/or foster new relationships on behalf of his client base.

17. That LUCY PIEDRAHITA-URIBE is a highly respected and well established political lobbyist for South America with personal ties to several Presidential families in the region and direct lineage to the First Family of Colombia.

18. That Ms. PIEDRAHITA-URIBE's reputation is a vital part of her business integrity and her ability to maintain existing client trust, as well as to acquire future business clients and/or foster new relationships on behalf of her client base.

19. That BERGMANN had a prior existing relationship ALTIERI that spanned back to 2007 as ALTIERI served as corporate counsel for an alternative energy company that BERGMANN had entered into a co-venture with regarding the conversion of BERGMANN coal to liquid fuel in Illinois. That this relationship resulted in the ongoing communications between the BERGMANN and ALTIERI as to the procurement of common business opportunities.

20. That in the last quarter of 2008, ALTIERI and other business clients of his introduced BERGMANN to Alvaro Uribe, the nephew of President Alvaro Uribe of Colombia, and his cousin Juan Piedrahita-Uribe, a resident of Palm Beach County, regarding coal mines that Alvaro owned in Colombia as well as rights to acquire new mines in the country. From these talks, Juan Piedrahita-Uribe and BERGMANN developed a business relationship regarding the potential buying and selling of coal from BERGMANN's coal mine in Colombia.

21. That as a result of these conversations and potential business transactions procured by Juan Piedrahita-Uribe, ALTIERI came to serve with BERGMANN's knowledge and through his

authority as corporate counsel for CLEAN COAL regarding the transactions that originated from business that BERGMANN and Juan Piedrahita fostered from relationships and prior existing contacts based from the United States.

22. To facilitate the new business clients that BERGMANN sought to obtain, he also authorized a seller-side representative (also known as a Seller Mandate/Representative, as so referenced herein) for CLEAN COAL in the United States, Barry Schneer, JD/MBA.

23. That the Seller Mandate had requested that BERGMANN place a representative in Colombia that could meet with prospective clients and exchange documents on behalf of the Seller Mandate or corporate counsel, ALTIERI.

24. That the Seller Mandate explained to BERGMANN the need to have a live-person in Colombia to meet with new clients as these transactions involve tens of millions to over a hundred million dollars and require a face behind the voice they hear on the phone.

25. That in the last quarter of 2008, BERGMANN agreed to this addition to the team, and the Seller Mandate requested that LUCY PIEDRAHITA-URIBE, relative to the Presidential First Family of Colombia and President Alvaro Uribe, as his "First Representative" in Colombia for CLEAN COAL.

26. That BERGMANN, ALTIERI, and PIEDRAHITA-URIBE worked from the last quarter of 2008 until the date of the CEASE AND DESIST DEMAND LETTER to assist CLEAN COAL sell its coal from Colombia to buyers around the world.

27. That BERGMANN signed and authorized a document acknowledging PIEDRAHITA-URIBE as the First Representative of the Seller Mandate/Representative, Barry Schneer for CLEAN COAL, and provided this document to PIEDRAHTIA-URIBE for the purpose of meeting with a potential client and thereby verifying her affiliation to the company.

28. That ALTIERI and PIEDRAHITA-URIBE had successful procured numerous coal purchasers for CLEAN COAL that had provided corporate counsel with Irrevocable Confirmed Purchase Orders (ICPOs) and executed contracts.

29. That many of these transactions advanced to the stage that the buyers would travel to Colombia to finalize the deal and when they would contact the company's local office by told by LONDONO that these people do not work for the company and that it is best to deal with him directly.

30. That on one occasion such a communication was relayed back to the Seller Mandate/Representative who contacted BERGMANN directly to rectify the matter, that BERGMANN immediately contacted LONDONO and affirmed that these people were part of his team. That BERGMANN even gave Seller Mandate /Representative Schneer, LONDONO's private cell number to call him directly, but Schneer stated that he felt BERGMANN's conversation with his partner would be sufficient for him.

31. That over the course of the next couple months BERGMANN's team was able to procure several confirmed purchase orders that all seemed to be derailed by statements coming from CLEAN COAL as to not to do business with these representatives and that all transaction should be done through LONDONO's team down in Colombia.

32. That ALTIERI and PIEDRAHTIA-URIBE had put several hundred hours into these deals and was directly harmed and specifically told that buyer did not want to further the business based on these statements and that this business was lost or "cannibalized" by LONDONO.

33. That some clients continued to believe that BERGMANN's team was sincere in its representations and sought to continue business with them. That ALTIERI and PIEDRAHTIA-URIBE stated to these clients that they would get the misunderstanding worked out to remain patient while the offices correct the miscommunications. That in fact LONDONO had nointention to ever correct these misrepresentations and wanted nothing more than to "steal the fruit" from the contacts, hard work and procurement ALTIERI and PIEDRAHTIA-URIBE had put into procuring these deals to point of closure.

34. That in an effort to further thwart the efforts of ALTIERI and PIEDRAHTIA-URIBE to maintain its contacts and potential business transactions, LONDONO authorized and/or authored a defamatory posting on the company's website, www.cleancoaltec.com, intended to undermine the credibility of the ALTIERI and PIEDRAHITA-URIBE, wrongfully acquire their business transaction, and malicious defame their good name and character thereby preventing them from conducting ancillary business as well.

35. That Plaintiffs have been told and believe that there is a partner dispute over money due and owing one partner, and that the actions taken by LONDONO and BERGMANN are the result of this proclaim feud between them. That the Plaintiffs do not know, at this time and probably not until discovery, the full extent of the dissonances between them or the motivation, other than greed, that would cause LONDONO and BERGMANN to act in this intentional, malicious, wanton and tortuous manner toward clearly authorized and well documented representatives of the company.

36. That via CLEAN COAL's website, www.clencoaltec.com, the company's executives LONDONO, President, and BERGMANN, CEO, or their direct agents, published internet postings that falsely claim that ALTIERI and PIEDRAHITA-URIBE participated in "*fraudulent representation*" of the CLEAN COAL. See Exhibit 1

37. That via CLEAN COAL's website, www.cleancoaltec.com, the company's executives LONDONO, President, and BERGMANN, CEO, or their direct agents, published internet postings that state to "*disregard any documentation*" provide by ALTIERI and PIEDRAHITA-URIBE.

38. That via CLEAN COAL's website, www.cleancoaltec.com, the company's executives LONDONO, President, and BERGMANN, CEO, or their direct agents, published internet postings that state to contact their Bogota office directly  if they have had contact with any of the named individuals.

39. That via CLEAN COAL's website, www.cleancoaltec.com, the company's executives LONDONO, President, and BERGMANN, CEO, or their direct agents, published internet postings that states unsubstantiated and inflammatory statements that ALTIERI and PIEDRAHITA-URIBE will be "prosecuted to the fullest extent of the law, local as well as abroad."

40. That Defendants published the false statements to third parties via their website, www.claencoaltec.com,  including to verified clients in the State of Florida; specifically Palm Beach County, Miami-Dade County, Broward County, Hillsborough County, State of Florida, among others counties and States, and that such third parties did indeed read Defendants intentionally defamatory and false statements.

41. CLEAN COAL, LONDONO and BERGMANN published and continue to publish the aforementioned defamatory statements regarding Plaintiffs in an attempt to cause injury to Plaintiffs ability to further its business transactions.

42. That prior to filing this Complaint, Plaintiff's attorney contacted BERGMANN via email and sent written correspondence, entitled, "Cease and Desist Demand Letter," and informed BERGMANN of the false, defamatory and injurious statements posted on the www.cleancoaltec.com website and requested that CLEAN COAL through its agents or representatives, LONDONO or BERGMANN remove the defamatory statements from the website. Nonetheless, LONDONO and BERGMANN refused and failed to remove the defamatory statements regarding ALTIERI and PIEDRAHITA-URIBE from its website.

43. That BERGMANN communicated directly to Representatative Schneer and PIEDRAHITA-URIBE that he had forwarded the "Cease and Desist Demand Letter" to LONDONO and that he had received it.

44. That AQUAPETRO is a company owned and controlled by LONDONO and is the registrant for website, www.cleancoaltec.com. That LONDONO uses this alternative registrant, as

opposed to the company upon the website is based CLEAN COAL to further frustrate and obfuscate Plaintiffs ability to have the defamatory and malicious posting removed.

45. That the Defendants published the false and defamatory statements against Plaintiffs in two languages, both English and Spanish, and thereby expanded the proliferation of the defamation and the extent of the damages upon Plaintiffs.

46. That the Defendants publishing of false and defamatory statements against Plaintiffs publicly in two languages, in addition to slanderous statements recapitulating same, has caused Plaintiff ALTIERI and PIEDRAHITA extreme mental and emotional stress and anguish.

47. That the Defendants publishing of false and defamatory statements against Plaintiffs publicly in two languages, in addition to slanderous statements recapitulating same, has caused Plaintiff ALTIERI and PIEDRAHITA loss of reputation, both in business, politically, socially and personally.

48. That AQUAPETRO is an alter ego company LONDONO and serves only as a "shelf company" for no other purpose than to hold assets beyond the reach of CLEAN COAL.

49. That BERGMANN was asked on numerous times by the Plaintiffs to remove the defamatory posting and was even asked by his Seller-side representative to contact the hosting company directly to remove the defamatory posting, that neither BERGMANN or LONDONO have done anything to removed the defamatory web posting.

50. That Defendants, CLEAN COAL, LONDONO, BERGMANN, AQUAPETRO, posted false and defamatory statements regarding ALTIERI and PIEDRAHITA-URIBE in an attempt to lure verified buyers away from ALTIERI and PIEDRAHITA-URIBE to not pay their rightful and contracted commission.

51. That the following list delineates verified transactions for the Sale and Purchase of coal by Defendant CLEAN COAL that was procured by ALTIERI and PIEDRAHITA-URIBE for the benefit of CLEAN COAL.

52. That the following transaction commission's that would, absent the Defendants' tortious conduct, be due and owing Plaintiffs, total FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD).

53. That these commission amount has been determined as the rightfully contracted commissions in accordance with, and pursuant to, the below designated "Purchase Orders" and/or "Sale

Contracts" and constitutes the basis upon which the alleged minimum claimed damage amount of $410, 440,000.00 USD has been formulated.

54. That the following delineation of direct and readily identifiable monetary damages pursuant to executed Purchase Orders and Purchase & Sale Contracts as stated below is in no way intended to serve as the full extent of the damages incurred by the Plaintiffs, but rather stated to serve the minimum damage amount claimed herein to date:

| Contracted Party | Commission Spread | Tonnes/Coal | Duration | Seller-Side Commission |
|---|---|---|---|---|
| Angel Rodriguez | $5.00 | 500,000 | 5yrs | $75,000,000 |
| Atlantic Richfield | $5.00 | 100,000 | 1yr | $3,000,000 |
| CAMS | $2.00 | 150,000 | 1yr | $1,800,000 |
| CFE | $1.00 | 260,000 | 45Months | $5,580,000 |
| CEM | $4.00 | 500,000 | 5yrs | $60,000,000 |
| MAC Mining | $2.00 | 100,000 | 1yr | $1,200,000 |
| Argos Consultores | $3.00 | 500,000 | 1yr | $9,000,000 |
| Bangladesh Gov't | $4.00 | 90,000 | 1yr | $180,000 |
| OJO De Buffalo | $3.00 | 240,000 | 5yrs | $21,600,000 |
| Quinn Int'l | $3.00 | 150,000 | 5yrs | $13,500,000 |
| Clemente Jacques | $4.00 | 500,000 | 5yrs | $60,000,000 |
| Team Savant | $3.00 | 500,000 | 5yrs | $45,000,000 |
| Terra Energy | $4.00 | 500,000 | 5yrs | $60,000,000 |
| TranAsia | $2.00 | 100,000 | 4Months | $400,000 |
| UniEast/Saldanha | $2.00 | 240,000 | 1yr | $2,880,000 |
| Walter Abreu | $3.00 | 150,000 | 1yr | $2,700,000 |
| Zucker Mex | $4.00 | 150,000 | 1yr | $3,600,000 |
| Carron Energy | $3.00 | 500,000 | 5yrs | $45,000,000 |

**Total**                                                                 **$410,440,000 USD**

## FIRST CAUSE OF ACTION

### FOR LIBEL PER QUOD
### (Against all Defendants)

55. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

56. That Defendants, CLEAN COAL, LONDONO, BERGMANN, AQUAPETRO have repeatedly made false and defamatory statements regarding Plaintiffs business operations and professional conduct.

57. That Defendants publications of the false, defamatory and injurious statements were not subject to any available publication or legal privilege.

58. That Defendants false, defamatory and injurious statements expose Plaintiffs to distrust, hatred, contempt and ridicule.

59. That Plaintiffs assert and know to be true that Defendants false and defamatory statements were made with knowledge of their falsity or with reckless disregard of the truth or falsity of the statements and with the specific intent and knowledge that the statements would damage Plaintiffs.

60. That Plaintiffs assert and know to be true that Defendants made false and defamatory statements with actual malice toward Plaintiff with the specific intent to damage and harm Plaintiffs.

61. That Defendants further demonstrated their malice intent by continuing to post and promulgate such defamatory language after being served with a Cease and Desist Demand Letter from Plaintiffs' counsel.

62. That Plaintiffs suffered substantial damages as a result of Defendants' actions in an amount not yet determined but in not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD), including but not limited to loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts excluding Court cost, penalties, injunctive relief or any other relief this Honorable Court deems just and proper.

63. That Plaintiffs assert and know that Defendants' in making the false and defamatory statements is guilty of fraud, oppression and malice. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount sufficient to punish Defendant and deter future misconduct.

## SECOND CAUSE OF ACTION

### FOR LIBEL PER SE
### (Against all Defendants)

64. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

65. That Defendants, CLEAN COAL, LONDONO, BERGMANN, AQUAPETRO have made false statements about Plaintiffs which are per se injurious as they accuse the Plaintiff of ongoing criminal misconduct and criminal activity.

66. That the nature of the false statements is such that malice and actual damages is presumed.

67. That Defendants published the false statements to third parties via posting the statements on the internet, directly communicating the statements to verified clients, and directly communicating the statements to third parties.

68. That the falsity of these statements injured Plaintiffs' reputation in the business community and with the public.

69. That as a direct and proximate consequence of Defendant's conduct Plaintiffs suffered substantial damages in an amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD); including but not limited to loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts, and in excess of the jurisdictional minimum of this of this Honorable Court.

70. That Plaintiffs assert and know to be true that the Defendants by making false and defamatory statements is guilty of fraud, oppression and malice. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish Defendant and deter future misconduct.

# THIRD CAUSE OF ACTION

## FOR INTERFERENCE WITH BUSINESS REALTIONSHIPS

### (Against CLEAN COAL, LONDONO, BERGMANN)

71. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

72. Plaintiffs established and had prior existing business relationships with industry professionals, coal buyers, coal sellers, buyer mandates, thermal electric companies and other potential clients through their contacts, law firm, position of politics, relationship to Uribe Coal Holdings in Colombia, and other business ventures.

73. Plaintiffs asserts and know to be true that Defendants knew of the existing business relationship between Plaintiffs and their contacts, legal relationships, political contacts, coal industry contacts, and use of these parties to view the internet when conducting due diligence prior to concluding a business transaction.

74. That Plaintiffs assert and know to be true that Defendants intentionally interfered with their business relationships by posting false and defamatory statements for the express purpose of destroying Plaintiffs' established and future business relationships.

75. That Plaintiffs assert and know to be true that Defendants interference with Plaintiffs business relationships was without legal or other justification.

76. That as a result of Defendants' intentional and unjustified interference, Plaintiffs have suffered damages in an amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD); including but not limited to loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts, and in excess of the jurisdictional minimum of this of this Honorable Court.

77. That Plaintiffs assert and know to be true that the Defendants by making false and defamatory statements is guilty of fraud, oppression and malice. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish Defendant and deter future misconduct.

## FOURTH CAUSE OF ACTION

### FOR INJURIOUS FALSEHOOD-TRADE LIBEL
### (Against all Defendants)

78. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

79. Plaintiffs assert and know to be true that Defendants intentionally made false statements about Plaintiffs' business and business practices which are untrue and disparaging as to the nature and manner in which Plaintiffs conduct business.

80. That Defendants published the aforementioned untrue and disparaging statements to third parties through posting the statements via the internet, CLEAN COAL website, www.cleancoaltec.com, and making direct communications to verified or contracted clients, and making direct communications to numerous third parties; including but not limited to calls to government officials, industry leaders, prior existing business contacts.

81. That Plaintiffs are informed and believe to be true that the Defendant knew the false statements were likely to influence prospective clients and verified clients of Plaintiffs' for sole and intended purpose of having these clients avoid business Plaintiffs and transact directly with Defendants; thereby saving them ten of millions in commission fees.

82. That Plaintiffs assert and know to be true that the false statements materially and substantially induced verified clients with signed documentation, potential clients and third parties not to do business with Plaintiffs and not to close transactions with Plaintiffs for fear that the CLEAN COAL would not honor the duly signed and executed agreements.

83. That Plaintiffs assert, can document and know to be true that as a result of Defendants publishing the false and defamatory statements to verified clients with signed documentation, potential clients and third parties, Plaintiffs have suffered substantial monetary loss in the form of loss business commissions and business contacts and lost business opportunities in an amount less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD); including but not limited to loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts, and in excess of the jurisdictional minimum of this of this Honorable Court.

84. That Plaintiffs assert and know to be true that the Defendants by making false and defamatory statements is guilty of fraud, oppression and malice. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish Defendant and deter future misconduct.

# FIFTH CAUSE OF ACTION

## DEFAMATION, PER SE
### (Against all Defendants)

85. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

86. That Defendants have made false statements about Plaintiff which are *per se* injurious as they accuse the Plaintiff of perpetrating ongoing frauds, scams and illicit business dealings.

87. That the nature of the false statements is such that malice and actual damage is presumed.

88. That Defendants published the false statements to third parties via there website, including verified clients in Miami-Dade County, State of Florida.

89. That Defendants' false, defamatory and injurious statements harm the reputation of Plaintiffs so as to lower Plaintiffs in estimation of Plaintiffs' business clients and to interfere with the business relationships of Plaintiff.

90. That Plaintiffs suffered damages in the State of Florida, United States, and Colombia in specific, and internationally in general, as a result of Defendant's actions.

91. That Defendants' false and malicious statements constitute under the prima facia elements of defamation per se conduct that is "injurious to another in their trade, business, or profession"

92. That as a result of Defendants' intentional and unjustified interference, Plaintiffs have suffered damages in an amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD); including but not limited to loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts, and in excess of the jurisdictional minimum of this Honorable Court.

93. That Plaintiffs assert and know to be true that the Defendants by making false and defamatory statements is guilty of fraud, oppression and malice. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish Defendant and deter future misconduct.

**SIXTH CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against CLEAN COAL, LONDONO, BERGMANN)**

94. The allegations aforementioned are incorporated herein by reference as if each of said paragraphs was restated and re-alleged in its entirety.

95. That Defendants have made false statements about Plaintiffs which are defamatory and per se injurious to Plaintiffs of perpetrating ongoing frauds, scams and illicit business dealings.

96. That the Plaintiffs had successfully procured valid and enforceable contractual documents for the sale or purchase order of Type B Steam Coal between CLEAN COAL and third parties.

97. That Defendants, LONDONO and BERGMANN were aware of the contractual relationship between the Plaintiffs, as commissioned agents for CLEAN COAL.

98. That the Defendants intentionally and unjustly induced the breach of the contract to not pay due and owing commissions, or re-contracted with third parties without including Plaintiffs, or terminated business contracts by scaring third party that CLEAN COAL would not deliver product if the Plaintiffs were part of the transaction.

99. That Defendants engaged this practice to "build a book" of business contacts and "End Burners" for CLEAN COAL to approach at a future date to solicit and engage business contracts without having to pay the rightful and contracted commission to Plaintiffs.

100. That the breach of contract by the third party clients of Plaintiffs was the direct result and proximate cause of Defendants false and fraudulent statements made to such parties.

101. That as a result of the loss of contracts by Defendants defamatory and false statements, Plaintiff have loss business commissions and business opportunities in the amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD) as the result of the loss of documented commissions from executed Irrevocable Confirmed Purchase Orders and signed contracts procure by Plaintiffs.

102. That Defendant LONDONO, in his capacity as a corporate officer, tortiously interfered with several contracts between Plaintiffs' clients and the corporation, and that Defendant,

LONDONO acted outside the qualified privilege he enjoys as a corporate officer to influence actions of the corporation.

103.     That Defendant LONDONO acted outside solely for his own gain and solely for the purpose of harming the Plaintiffs since such conduct is not undertaken to further the corporations interests, but rather to increase the monetary gain to Defendant.

104.     That Defendant BERGMANN, in his capacity as a corporate officer, tortiously interfered with several contracts between Plaintiffs' clients and the corporation, and that Defendant, BERGMANN acted outside the qualified privilege he enjoys as a corporate officer to influence actions of the corporation.

105.     That Defendant BERGMANN acted outside solely for his own gain and solely for the purpose of harming the Plaintiffs since such conduct is not undertaken to further the corporations interests, but rather to increase the monetary gain to Defendant.

106.     That Defendants LONDONO and BERGMANN were acting in their own self interest when acting to induce the breach of the corporation's contract with Plaintiffs' clients.

107.     That Defendants LONDONO and BERGMANN's actions do not represent any qualified privilege and are intentional, malicious and fraudulent and for the sole purpose of blatant greed and wanton defamation without any regard to the reputation or character of the person that their intentional statements were aimed to discredit.

108.     That Defendants were aware of the contractual commissions of the business contracts they sought to have breached by Plaintiffs' clients, and have full and complete knowledge of the damages that would be sought in the event that such conduct was not rectified, and that Plaintiffs' are well within their statutory right to claim damages in the amount not less than the documented commission agreement of verified Irrevocably Confirmed Purchase Orders or Contracts for Sale, in the amount not less than FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD) not including Court cost, attorney fees, and other relief the Court deems just and proper.

**WHEREFORE**, the Plaintiff respectfully requests this Honorable Court to:

i)     Enter a judgment against CLEAN COAL, LONDONO, and BERGMANN for compensatory damages of FOUR HUNDRED TEN MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS (i.e. $410,440,000.00 USD),

ii)    Enter injunctive relief against AQUAPETRO  as registrant ordering it to remove the defamatory language and post a Court agreed retraction,

iii)   Enter injunctive relief against CLEAN COAL as owner of the website ordering it to remove the defamatory language and post a Court agreed retraction,

iv)   Enter injunctive relief against ALVARO HERNANDEZ  LONDONO ordering him, personally, and  as owner and executive officer of CLEAN COAL and AQUAPETRO and publisher of defamatory statements ordering it to remove the defamatory language and post a Court agreed retraction.

v)    Enter injunctive relief against JOSEPH BERGMANN ordering him, personally, and as owner and executive officer of CLEAN COAL and AQUAPETRO and publisher of defamatory statements.

vi)   Issue and Order directing the web hosting company for www.cleancoaltec.com, to remove (i.e. take down) the website,

vii)  Award Court cost,

viii) Award Defendant pre and post judgment interest,

ix)   Award Defendant attorney fees, and any other relief this Court determines to be just and proper.

*Respectfully submitted,*

**Chad Altieri, Esq,**
Plaintiff, prose
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Ph: 305-562-4981
Fax: 305-865-1268

# EXHIBIT 1

©Clean Coal Technology



PUBLIC NOTICE

THERE HAS BEEN FRADULENT REPRESENTATION BY THE FOLLOWING INDIVIDUALS.

**MR. BARRY A SCHNEER**
MS. LUCY PIEDRAITA
**Chad Altieri**
MARIA EUGENIA DUQUE
**ALFONSO MONTILLA**
RICARDO CHAVEZ

THESE INDIVIDUALS ARE CLAIMING TO BE LEGAL REPRESENTATIVES AND OR MANDATES TO OUR COMPANY, CLEAN COAL TECHNOLOGY INC.

PLEASE DISREGARD ANY DOCUMENTAION WITH CLEAN COAL TECHNOLOGY, INCS LOGOS AND OR STATIONARY THAT IS IN THEIR POSSESSION

PLEASE INFORM OUR HOME OFFICES IN BOGOTA, COLOMBIA OF ANY OTHER INDIVIDUALS THAT YOU MIGHT BE AWARE OF, ARE CLAIMING TO BE REPRESENTATIVES, MANDATES, AND OR ASSOCIATED WITH OUR COMPANY.

THESE INDIVIDUALS WILL BE FULLY PROSECUTED TO THE EXTENT OF THE LAW, LOCALLY, AS WELL AS ABROAD.

## COMUNICADO A LA OPINIÓN PÚBLICA

Personas inescrupulosas haciendo mal uso de papeles oficiales de nuestra compañia, han duplicando poderes, cartas, comunicados, etc. Por lo anterior nos permitimos informar lo siguiente:

- Todo documento referente al negocio del carbón tales como LOIS (cartas de intención de compra), poderes especiales, autorizaciones, certificaciones y demás, **CON FECHA ANTERIOR AL 1º DE NOVIEMBRE DE 2008, CARECEN DE CUALQUIER TIPO DE VALIDEZ**

- Cualquier documento emitido por nuestra compañia debe venir con fondo de **marca de agua de nuestro logo, membrete institucional, firmas autorizadas en original y sello seco de seguridad,** sin alguna de las anteriores características "CUALQUIER DOCUMENTO CARECE DE VALIDEZ"

- Cualquier comunicación o documento que llegue a cualquier persona natural o jurídica, deberá ser confirmada vía telefónica con nuestras oficinas en Bogotá al teléfono 2136787 o al correo info@cleancoaltec.com

- El uso no autorizado de nuestra imagen corporativa o la falsificación de documentos constituye un delito, por lo que solicitamos hacernos saber cualquier irregularidad inmediatamente para tomar las medidas judiciales necesarias

- **Clean Coal Technology** no emite poderes a nadie para obrar en representación de la compañia

Agradecemos la colaboración prestada y reiteramos la invitación a hacer caso omiso a cualquier persona o documento, que haciendo mal uso de nuestro nombre, quiera acceder a cualquier tipo de negociaciones. Clean Coal Technology solo es representado directamente por su presidente y/o gerente

Case 1:09-cv-21032-PCH   Document 1   Entered on FLSD Docket 04/22/2009   Page 21 of 21

FILED by _____ TS ___ D.C.

**JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

**April 22, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

Altieri, Chad
Piedrahita, Lucy

**DEFENDANTS**

Clean Coal Technology
Londono, Alvaro Hernandez, et al

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Palm Beach County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☒ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Miami 09CV 21073 Huck/O'Sullivan

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO        b) Related Cases ☐ YES ☐ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

LENGTH OF TRIAL via **1** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  $410,440,000 USD

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD _Chad Altieri_

DATE  4/22/09

FOR OFFICE USE ONLY

AMOUNT  350        RECEIPT # 146508        IFP